**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.


ADDISON INSURANCE COMPANY, an Illinois corporation,

      Plaintiff,

v.

HUDSON MAYNARD, individually,
MAYNARD 5, INC., a Colorado corporation
JACK HAMM, individually,
NICOLE HAMM, individually
STEAMBOAT TREEHOUSE, LLC, a Colorado limited liability company, and
KENNETH WRIGHT, individually,

      Defendants.

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES**

---

COMES NOW the Plaintiff, Addison Insurance Company ("Addison" hereinafter) by and through its attorneys, Kevin F. Amatuzio and Andrew M. LaFontaine of Montgomery, Kolodny, Amatuzio & Dusbabek, LLP, and for its Complaint against Hudson Maynard and Maynard 5, Inc. (collectively "Maynard"), Jack Hamm, Nicole Hamm, and Steamboat Treehouse, LLC (collectively "Hamm"), and Kenneth Wright ("Wright"), states and alleges as follows:

**PRELIMINARY ALLEGATIONS, JURISDICTION AND VENUE**

1.      Plaintiff Addison is an Illinois corporation duly authorized to transact the business of insurance in Colorado, with its principal place of business in Cedar Rapids, Iowa.

2.      Defendant Hudson Maynard is an individual resident of Colorado.

3.      Defendant Maynard 5, Inc., is a Colorado corporation.

4.     Defendant Jack Hamm, is, upon information and belief, an individual resident of Colorado.

5.     Defendant Nicole Hamm is, upon information and belief, an individual resident of Colorado.

6.     Defendant Steamboat Treehouse, LLC, is a Colorado limited liability company.

7.     Defendant Kenneth Wright is, upon information and belief an individual resident of Florida.

8.     No defendant is a resident or citizen of the State of Illinois.

9.     This Court has jurisdiction over this Complaint based upon 28 U.S.C. § 1332. Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs of suit.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c), because multiple defendants reside in Colorado, the factual events giving rise to the damage claim underlying this action occurred in Colorado, the insurance policies at issue in this action were negotiated and issued in the State of Colorado and were to be performed in Colorado, and the location of performance to date has been in the State of Colorado.

## FACTUAL BACKGROUND

11.     Addison incorporates the allegations of Paragraphs 1 through 10 herein as if set forth in full.

12.     On or about June 29, 2005, Addison issued a Commercial General Liability Policy, No. 60337194 ("the First Policy"), to Maynard, with a stated coverage period from  June 29, 2005 to June 29, 2006 and a stated per occurrence liability coverage limit of $1 million.

13.     On or about September 28, 2005, Addison duly and lawfully cancelled the First Policy for nonpayment of premiums.

14.     On or about October 1, 2005, Defendants Jack Hamm and Nicole Hamm entered into a construction agreement with the Maynard Defendants to build a residence on Lot 114, Tree Haus Subdivision, Routt County, Colorado ("the Property"). Steamboat Treehouse, LLC, is the record titleholder of the Property and is, on information and belief, a limited liability company owed by Jack and Nicole Hamm.

15.     During the winter or early spring of 2006, prior to Maynard's completion of work on the Property under the construction contract, one or more mudslides or excavation collapses occurred on the Property, causing damage to the Property.

16.     Maynard knew of this damage, in whole or in part, on or before March 10, 2006, at which time Hudson Maynard alerted Hamm that the slides or collapses had taken place.

17.     The work called for in the Maynard – Hamm construction contact was not complete at the time of the aforementioned slides or collapses, and was never completed by Maynard.

18.     On or before March 10, 2006, Maynard was aware that a claim or suit would probably be asserted by Hamm against Maynard, and that Maynard would be legally obligated to pay damages to Hamm, in regard to the subject loss at the Property.

19.     On or about March 16, 2006, Maynard submitted an application to renew its insurance coverage with Addison. As part of its application, Maynard represented that there were no known or apparent lawsuits known or apparent claims pending or potentially pending as a result of its contracting operations, including allegations of breach of warranty.

20.     Based upon this representation, Addison issued a second General Liability Policy, No. 60345560 ("the Second Policy"), to Maynard, with a stated policy period of March 16, 2006 to March 16, 2007 and stated per occurrence liability coverage limits of $1 million.

21.     On or about September 14, 2006, Hamm brought suit against Maynard for breach of contract and negligence surrounding the work done on and to the Property. That action, styled *Steamboat Treehouse, LLC, Jack Hamm and Nicole Hamm v. Maynard 5, Inc., and Hudson Maynard*, Case No. 2006CV160, is currently pending in Colorado District Court for the County of Routt ("the Underlying Action").

22.     A separate action, styled *Kenneth Wright v. Jack Hamm, Nicole Hamm, and Steamboat Treehouse, LLC*, Case No. 2007CV57, in the Routt County District Court, has been consolidated into the Underlying Action.  In the *Wright v. Hamm* action, Plaintiff Wright claims damages to his property, which is situated adjacent to the Hamm Property, because of alleged fault or wrongdoing in relation to the aforementioned mudslides or collapses.  Plaintiff Wright in that action has filed an amended complaint dated June 22, 2007, in which he names a "John Doe" defendant as the person or entity which is "the Hamms' and Steamboat Treehouse LLC's current construction contractor for the residence."   Upon information and belief, the sole claim asserted against the "John Doe" defendant is for alleged trespass with the intent to commit spoliation of evidence.  Upon information and belief, the person and/or entity referenced by the Wright "John Doe" designation is Maynard.

23.     Maynard has tendered the Underlying Action to Addison under the First Policy and/or Second Policy for defense and indemnification.   The amount of damages claimed against

Maynard in the Underlying Action substantially exceeds the sum of $75,000.00, exclusive of interest and costs of suit.

24.     Maynard procured a renewal policy of general liability insurance from Addison numbered 60345560 with a stated coverage term from March 16, 2007 to March 16, 2008 (the "Third Policy" hereinafter).  The First, Second and Third Policies are collectively referred to as the "Policies" hereinafter.

25.     Addison is defending Maynard in the Underlying Action; subject, however, to a full reservation of rights to, among other things, commence this declaratory judgment action to determine the parties' rights and obligations under the Policies as they respect the Underlying Action, and to seek reimbursement of attorney fees and costs incurred in the defense of Maynard in the Underlying Action once it is determined that Addison owes no duty to defend.  In its reservations of rights, Addison properly and timely raised coverage issues and defenses including those at issue in this action as set forth hereinafter in this Complaint.

26.     Addison denies and disputes that any of the Policies afford actual or potential coverage for the benefit of Maynard with respect to the Underlying Action, and denies that it owes any duties of defense or indemnity for the benefit of Maynard with respect thereto.  This dispute is ripe for determination by way of a declaratory judgment.

27.     The issues of fact, if any, relevant to Addison's Complaint, are independent of, and separable from, the relevant facts respecting the claims asserted against Maynard in the Underlying Action.

28.     Each of the Policies are commercial general liability policies that were issued with the same Commercial General Liability Coverage Form CG-0001 (12-04), a standard form

coverage part produced by the Insurance Service Office and approved for use in the State of

Colorado.  This form provides in relevant part as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGES LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

*            *            *

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** –

6

Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

*      *      *

## 2. Exclusions

This insurance does not apply to:

### . . . b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*      *      *

### j. Damage to Property

"Property damage" to:

. . . **(5)**  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

 .   .   .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
**(1)** A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or
**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

*                              *                              *

**SECTION V – DEFINITIONS**

*                              *                              *

**8.**  "Impaired Property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:
**a.** The repair, replacement, adjustment or removal of "your product" or "your work";
**b.** Your fulfilling the terms of the contract or agreement.

*            *            *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*            *            *

**16.** "Products-completed operations hazard":
  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
    **(1)** Products that are still in your physical possession; or
    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
      **(a)** When all of the work called for in your contract has been completed.
      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

*            *            *

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*            *            *

**22.** "Your work":

  **a.** Means:
    **(1)** Work or operations performed by you or on your behalf; and
    **(2)** Materials, parts or equipment furnished in connection with such work or operations.
  **b.** Includes

**(1)** Warranties, or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

*                         *                         *

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment – All Defendants)

29.     Addison incorporates the allegations of Paragraphs 1 through 28 herein as if set forth in full.

30.     Defendants Hamm and Wright are, upon information and belief, persons who have asserted or who may assert in the future claims for damages against Wright potentially within the coverage of Addison's policies of insurance issued to Maynard.  As such, defendants Hamm and Wright are persons interested in the outcome of this action and who are properly joined as parties to this action, and who should properly be bound by the determinations herein.

31.     The above-quoted terms and provisions of the Policies operate to exclude any potential coverage for damages potentially awardable against Maynard in the Underlying Action.

32.     Any property damage claimed in the Underlying Action did not occur while an enforceable insurance policy was in effect.

33.     Any coverage that might otherwise be available to or for the benefit of Maynard with respect to the Underlying Action is precluded and barred by operation of the "known loss" and/or "loss in progress" doctrines.

34.     Any coverage that might otherwise be available to or for the benefit of Maynard with respect to the Underlying Action is precluded and barred by considerations of public policy.

35.      Any coverage that might otherwise be available to or for the benefit of Maynard with respect to the Underlying Action is precluded and barred by the fortuity doctrine.

36.     None of the Addison Policies provide coverage for any other non- "property damage" liability that may have been incurred by any defendant in tort, contract or through any other legal theory.

37.     While Addison denies any potential coverage under any of the Policies for reasons aforesaid, any coverage, strictly *arguendo*, would be subject to the limits, sublimits, deductibles or retentions, all as set forth within the Policies.

38.     The foregoing allegations do not constitute all potential grounds upon which Addison may be judicially determined to have no liability to any Defendants herein, but rather only those grounds known based upon present knowledge, information and belief.  Addison respectfully reserves the right to continue its investigation and discovery during the pendency of this action, and to supplement, expand, or modify its coverage defenses as may be warranted in light of information thereby obtained.

**SECOND CLAIM FOR RELIEF**
**(Common Law Fraud, Fraud in the Inducement,**
**"Fraudulent Insurance Act" Under C.R.S. § 10-1-128(1) – Against Maynard)**

39.     Addison incorporates the allegations of Paragraphs 1 through 38 herein as if set forth in full.

40.     Maynard's March 16, 2006 policy renewal application contains a "Contractors Supplemental Questionnaire." Page two of this questionnaire asks, "Are there any lawsuits known or apparent claims pending or potentially pending against the applicant as a result of contracting operations, including allegations of breach of warranty in relation to work performed by the applicant?"

41.     In response to this question, Maynard checked a box labeled "NO."

42.     Maynard knew this representation to be false at the time the application for insurance was presented to Addison or its agents or representatives.

43.     Neither Addison nor its agents or representatives knew this representation to be false at the time the application for insurance was presented.

44.     Maynard intended that Addison rely on this false representation, and Addison in fact did reasonably rely thereon in issuing the Second Policy, to its detriment and damage.

45.     The information requested by Addison in the application, including the aforementioned question, was material to Addison's determination whether to issue the Second Policy.

46.     Addison has suffered damages as a result of their reliance on this false representation, in an amount to be proven at trial.

47.     Maynard's above-described actions constitute common law fraud, fraud in the inducement, and may amount to a "fraudulent insurance act" as defined in C.R.S. § 10-1-128(1).

48.     Addison is entitled to judgment against Maynard in the amount of its actual and consequential damages.

### THIRD CLAIM FOR RELIEF
#### (Rescission of the Second Policy – Against Maynard)

49.     Addison incorporates the allegations of Paragraphs 1 through 48 herein as if set forth in full.

50.     As a matter of equity, Addison is entitled to rescission of the Second Policy, which effectively voids the Second Policy *ab initio*.

51.     Addison has tendered to Maynard or, in the alternative, hereby tenders and stands ready to pay to Maynard, the amount of all premiums charged to and paid by Maynard for the

Second Policy, and to do any such further acts as may be necessary to restore Maynard to the position it maintained prior to the negotiation and purchase of the Second Policy.

### FOURTH CLAIM FOR RELIEF
**(Reimbursement of Defense Fees and Costs – Against Maynard)**

52.     Addison incorporates the allegations of Paragraphs 1 through 51 herein as if set forth in full.

53.     Addison owes no duty to defend Maynard in the Underlying Action, and in accepting Maynard's tender and demand for defense, has duly reserved its rights under the Policies to seek reimbursement of those attorney fees, costs, and litigation expenses incurred in the defense of the Underlying Action.  Addison is entitled to full reimbursement of those fees, costs and expenses, past, present and future, from Maynard.


WHEREFORE, Plaintiff pray for a speedy hearing in accordance with F.R.C.P. 57 and a declaratory judgment pursuant to the authority set forth in 28 U.S.C. §§ 2201 and 2202 adjudging and determining the rights and obligations of the parties, finding that there is no coverage afforded to or for the benefit of Maynard or any other Defendant under the Addison Policies for the claims asserted in the Underlying Action, and for a determination that Addison has no duty to defend or indemnity Maynard in that litigation.

Further, Addison prays for judgment entered in its favor against Hudson Maynard and Maynard 5, Inc., jointly and severally, for damages incurred, for rescission of the Second Policy, for the amount of its fees, costs and litigation expenses incurred in defending the Underlying Action, for an award of its costs of suit and attorney fees in this action, and for such other relief as the Court may deem just and proper.

DATED:  January 9, 2008.

Respectfully Submitted,

MONTGOMERY, KOLODNY,
AMATUZIO & DUSBABEK, L.L.P.


By:    s/ Andrew LaFontaine
        Kevin F. Amatuzio
        Andrew M. LaFontaine
        1775 Sherman Street, 21st Floor
        Denver, Colorado 80203
        Telephone: 303-592-6600
        kamatuzio@mkadlaw.com
        alafontaine@mkadlaw.com

ATTORNEYS FOR PLAINTIFF
ADDISON INSURANCE COMPANY

Plaintiff's Address:
Addison Insurance Company
118 Second Avenue SE
Cedar Rapids, Iowa 52401