IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-00054-WDM-BNB

ADDISON INSURANCE COMPANY, an Illinois corporation,

Plaintiff,

v.

HUDSON MAYNARD, individually,
MAYNARD 5, INC., a Colorado corporation,
JACK HAMM, individually,
NICOLE HAMM, individually,
STEAMBOAT TREEHOUSE, LLC, a Colorado limited liability company, and
KENNETH WRIGHT, individually,

Defendants.
_____

**ORDER**
_____

This matter is before me on the following motions filed by defendants Hudson Maynard and Maynard 5, Inc. ("Maynard"):

(1) **Motion to Stay Action Or, In the Alternative, To Dismiss Plaintiff's First Claim for Relief** [Doc. # 25, filed 3/21/2008] (the "Motion to Stay"); and

(2) **Motion for Ruling Concerning Due Date for Answer** [Doc. # 26, filed 3/21/2008] (the "Motion re Answer Date").

Addison Insurance Company ("Addison") insured Maynard. Maynard is a general contractor. He was hired by Steamboat Treehouse, LLC, and Jack and Nicole Hamm (collectively, the "Hamms") to construct a residence in Steamboat Springs, Colorado. On approximately September 14, 2006, the Hamms brought suit against Maynard in the District Court of Routt County, Colorado (the "Underlying Action"), alleging among other things

negligence in connection with the construction because Maynard "abandoned the site in a dangerous and precarious condition in November 2005," resulting in "a slide . . . on the subject Property in March 2006, which damaged the Property and substantially increased construction costs." State Court Complaint [Doc. # 25-2] at ¶4(b).

Sixteen months later Addison commenced this action against Maynard, the Hamms, and Kenneth Wright, an adjacent landowner who alleges that his property also was damaged as a result of the landslide. Addison asserts four claims for relief in this action: (1) against all defendants for a declaration that the "terms and provisions of the [insurance] Policies operate to exclude any potential coverage for damages potentially awardable against Maynard in the Underlying Action"; (2) against Maynard for fraud and fraud in the inducement in connection with the application for insurance; (3) against Maynard for rescission of the insurance contract; and (4) against Maynard for reimbursement of defense fees and costs incurred by Addison in defending Maynard in the Underlying Action.

The Motion to Stay seeks an order staying this action or dismissing Addison's first claim for relief "for anticipatory declaratory judgment because that claim necessarily involves resolution of claims asserted against Maynard in an underlying construction defect lawsuit." Motion to Stay at p.2. The Motion re Answer Date seeks an order that Maynard is not required to answer the Complaint at this time. Motion re Answer Date at p.3.

I.

Jurisdiction exists based on diversity of citizenship, 28 U.S.C. § 1332. Complaint [Doc. # 1, filed 1/9/2008] at ¶9. Although Addison does not refer to it, the authority of a federal court to issue a declaratory judgment exists through 28 U.S.C. § 2201, which provides that "[i]n a case

2

of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

It is established that declaratory judgment acts are procedural rules and, in diversity cases, the federal act applies. Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F. Supp 1090, 1092 (E.D. Pa. 1994); Louisiana Nevada Transit Co. v. Marathon Oil Co., 770 F. Supp. 325, 327 (W.D. La. 1991). Consequently, federal law determines whether a district court may properly enter a declaratory judgment in a given case.[1]

## II.

The Tenth Circuit Court of Appeals has articulated five factors which a court should consider in deciding whether to hear a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy;
> [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1169 (10th Cir. 1995). These factors recently were applied in a court in this district in American Family Mutual Ins. Co. v. Teamcorp,

---

[1] Colorado state law applies to the underlying substantive issues. See, e.g., Britamco Underwriters, 845 F. Supp. at 1093 (holding that "while federal law will be applied and will control whether or not the court can render a declaratory judgment, state law is to be applied to the underlying substantive issues").

3

Inc., 2007 WL 3024446 (D. Colo. Oct. 16, 2007), where the court recited the five factors and then added:

> Colorado law is instructive on the propriety of maintaining anticipatory declaratory judgment actions in the insurance context and provides that a factor to consider is whether the declaratory action "is independent of an separable from the underlying action." Under Constitution Associates [v. New Hampshire Ins. Co., 930 P.2d 556 (Colo. 1997)], a declaratory judgment action is not independent and separable and is thus inappropriate "where it could unduly prejudice the insured in the underlying action."

Id. at *2.

In the Constitution Associates case, the Colorado Supreme Court applied the Colorado Uniform Declaratory Judgments Law, sections 13-51-101 through 115, C.R.S., and held:

> First, declaratory judgment actions must be based on an actual controversy. Hence, jurisdiction exists only if the controversy contains a currently justiciable issue or an existing legal controversy, rather than the mere possibility of a future claim. Second, a court should not render a declaratory judgment unless it will fully and finally resolve the uncertainty and controversy as to *all* parties with a substantial interest in the matter that could be affected by the judgment. Lastly, in addition to the standards set out in our prior cases, we today enunciate the requirement that a trial court consider whether an anticipatory declaratory judgment action is independent of and separable from the underlying action.

930 P.2d at 561 (internal citations omitted; original emphasis). The first two considerations articulated in Constitution Associates are not in dispute. Among the considerations identified in Constitution Associates, only whether Addison's declaratory judgment claim is "independent of and separable from the underlying action" is at issue here.

The Colorado Supreme Court explained the meaning of an independent and separable claim as follows:

4

> For example, where it could unduly prejudice the insured in the underlying action, a declaratory judgment action prior to entry of a judgment against the insured is not independent and separable and is inappropriate. In Hartford [Ins. Group v. District Court, 625 P.2d 1013 (Colo. 1981)], two trucks were involved in a collision and one driver sued the other driver and that driver's employer. The employer's insurance company sought a declaratory judgment that the employee driver's actions were not covered by the policy because they were outside the scope of employment and were, in effect, intentional rather than negligent. This court upheld the trial court's order staying the declaratory judgment action until completion of the underlying lawsuit, because if the insured were forced to litigate the anticipatory declaratory action, he would have been prejudiced in the underlying case. Specifically, to prove that his actions were not intentional, the driver would have had to argue they were negligent. The defendant would then have been estopped from denying negligence in the underlying suit. Clearly this would have prejudiced his defense in the underlying suit and, hence, permission to proceed with the declaratory action was denied.

Id. at 562-63 (internal citations omitted.) In addition:

> The independent and separable standard helps to clarify some confusion in the law regarding the interrelationship between an anticipatory declaratory judgment action and the insurer's duty to defend versus the insurer's duty to indemnify. The duty to defend pertains to the insurance company's duty to affirmatively defend its insured against pending claims. The duty to indemnify relates to the company's duty to satisfy a judgment entered against the insured. The duty to defend is triggered more easily than is the duty to indemnify. Generally, the duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage, but the duty to indemnify does not arise unless the policy *actually* covers the alleged harm. Where there is no duty to defend, it follows that there can be no duty to indemnify. However, where there is a duty to defend, there is not necessarily a duty to indemnify.
>
> Declaratory judgment claims are more likely to be independent of and separable from the underlying litigation when the allegations in the underlying complaint do not even give rise to a duty to defend. Where that occurs, it may be appropriate to allow the insurer an opportunity to obtain an anticipatory declaration of its

5

> obligations towards its insured prior to the expenditure of considerable resources.
>
> On the other hand, where the duty to defend has arisen, anticipatory resolution of coverage issues is more problematic. In Hecla [Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083 (Colo. 1991)], the insurance companies were found to have a duty to defend against the pending claims, with a reservation of rights if they so chose, despite uncertainty about the companies' ultimate duty to indemnify. We concluded that the issue of coverage, or duty to indemnify would have to await final resolution of the underlying case. Hence, where there is a duty to defend, the duty to indemnify may not be neatly separable from the underlying facts.

Id. at 563-64 (original emphasis).

Colorado law also provides that a declaratory action raising the issue of an insurer's duty to indemnify prior to the conclusion of the underlying action "is premature, and should not be made until the underlying claims are resolved." Hecla Mining, 811 P.2d at 1086 and n.5. It is an overbroad interpretation, however, to read Hecla Mining to preclude a finding of no duty to indemnify if that determination flows derivatively from a finding of no duty to defend which is independent of and separable from the underlying action. Constitution Associates, 930 P.2d at 563 n.9.

### III.

A declaratory judgment on the issue of the duty to defend would settle the controversy of the availability of insurance coverage for this event, and in doing so would serve the useful purpose of clarifying important legal relations now at issue. Addison is not a party in the Underlying Action, and there is no alternative remedy which is better or more effective. Maynard does not argue that Addison's request for a declaration is either "procedural fencing" or a "race to *res judicata*," and I do not perceive that it is. The issue of the availability of coverage

will have to be decided--now or later, here or in the state court.

The only concern which might compel a decision to stay this case pending a resolution of the Underlying Action is the issue of comity: that is, whether allowing Addison's request for a declaration to proceed will improperly encroach upon state jurisdiction. The resolution of that issue turns on whether the determination of coverage is "independent of and separable from the underlying action."

As the Colorado Supreme Court has noted, "[t]he duty to defend is triggered more easily than is the duty to indemnify." Constitution Associates, 930 P.2d at 563. Consequently, "[w]here there is no duty to defend, it follows that there can be no duty to indemnify." Id. I therefore agree with Addison's argument that "the whole point of the Constitution Associates decision was to make it clear that an anticipatory declaratory judgment action may decide the duty to defend, as well as the duty to indemnify, by resort to facts outside of the complaint when no prejudice to the insured's defense would result." Plaintiff's Response In Opposition to Supplement to Motion to Stay Or Dismiss Action [Doc. # 50, filed 4/28/2008] (the "Response to Supplement") at p.2. In other words, Addison may ask this court by means of an anticipatory declaratory judgment action to declare that it has no duty to defend--and, derivatively, no duty to indemnify--so long as the facts necessary to make that decision are "independent of and separable from the underlying action."

The determination of coverage is not independent and separable if, for example, the insured must argue that his actions were negligent (rather than intentional) to establish coverage, because admitting negligence for purposes of coverage could prejudice him in the underlying action. See Constitution Associates, 930 P.2d at 562-63. By contrast, the issue is independent

and separable if coverage in the underlying action turns on whether the insured committed a violation of law, and before the anticipatory declaratory action was commenced the insured pled guilty to a law violation in a criminal prosecution arising out of the same events. See Pompa v. American Family Mutual Ins. Co., 506 F. Supp. 2d 412, 417 (D. Colo. 2007).

Addison opposes a stay of this action arguing and that the coverage issue is independent and separable, as follows:

> The essential coverage issues are twofold: (1) whether the "new" policy should be rescinded for misrepresentation by Maynard in the application; and (2) if not, whether the new policy affords potential coverage for the Hamm and Wright claims against Maynard such that Addison has a duty to defend Maynard in the suit. Addison contends that even if the policy is not rescinded, it will not extend coverage for the underlying claims for several reasons, including that the claimed damages occurred or began to occur before the Policy's effective date, the damage was known to the insured before the Policy began, and various exclusions would preclude coverage.

Scheduling Order [Doc. # 47, filed 4/28/2008] at pp.3-4. The "various exclusions" referred to by Addison in its declaratory judgment claim include, among other things, coverage territory, contractual liability, property damage arising out of the insured's operations, damage to the insured's work, and delay damages. Complaint at ¶¶28, 31, and 36-37.

Maynard argues that the issues are not independent and separable, as follows:

> Addison's coverage defenses necessarily are dependent upon, and inseparable from, the merits of the Hamm Lawsuit. Specifically, the Hamm Lawsuit concerns issues regarding the timing and extent of any property damages that occurred, the allocation of fault for any such property damage and the costs attributable to that damage. Addison's coverage defenses cited in its declaratory relief claim raise these same issues. . . . The insuring language and the exclusions upon which Addison relies raise issues concerning whether any property damage occurred, when it occurred, and who was responsible for the property damage. Thus, no question exists

8

> that . . . [Addison's] coverage defenses are necessarily linked to
> the merits of the Underlying Action.

Motion to Stay at pp.7-8.

It appears to me that the coverage issues in this action and the liability issues in the Underlying Action are not independent and separable. For example, apparently it is disputed whether there were any landslides, when they occurred, when Maynard knew that they had occurred or were occurring, what caused them, and the like. These issues go to both the coverage and the underlying liability claims. It takes little imagination to understand how positions taken by Maynard in one case could impact or prejudice him in the other. For example, a defense to the negligence claim in the Underlying Action might be that Maynard recognized the potential for the slides in the fall of 2005, took reasonable precautions to prevent them, but those precautions (though reasonable) proved inadequate. Such a position in the Underlying Action could prejudice Maynard here because Addison could use Maynard's assertion that he recognized the <u>potential</u> for a future slide as an admission that he knew prior to the policy period that the property damage <u>had occurred</u>, in whole or in part, excluding coverage pursuant to Section I(1)(b)(3) of the policy. <u>See</u> Complaint at ¶28.

Similarly, although Maynard has not suggested them, nor have I attempted to identify any, I believe that Addison's reliance on several contractual exclusions to bar coverage could give rise to many scenarios in the defense of this action which could prejudice Maynard in his defense of the Underlying Action.

IV.

I find that the determination of coverage is not independent of and separable from the Underlying Action. Consequently, and in view of the Colorado Supreme Court's decision in <u>Constitution Associates</u>, regard for comity compels that I stay this action pending the determination of the Underlying Action.

In view of my decision that this action should be stayed pending a resolution of the Underlying Action, Maynard need not answer the Complaint at this time.

IT IS ORDERED that the Motion to Stay is GRANTED. Further proceedings in this case are STAYED pending the determination of the Underlying Action in the Routt County District Court.

IT IS FURTHER ORDERED that the Motion re Answer Date is GRANTED. Maynard is relieved of the obligation to answer the Complaint pending further order of the court.

IT IS FURTHER ORDERED that Addison shall submit a status report within 10 days of any action in the Underlying Action resolving that case, reporting what has occurred and how it impacts this case.

Dated May 15, 2008.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge